JOHN M. DOYLE ET AL., RESPONDENTS, v. LOFT, INCOR-
PORATED, APPELLANT.

Submitted December 11, 1922—Decided March 5, 1923.

1. Plaintiff, for a considerable period, and at frequent intervals,
   had bought goods from defendant at its place of business; such
   purchases being made of defendant's agent in charge of its store.
   This agent stated to plaintiffs that defendant was offering goods
   at a reduced price if purchased in large quantities, and plaint-
   iffs made two purchases, paying cash therefor to the agent, but
   received only a part of the goods, and an action was brought for
   failure to deliver the balance of such goods. *Held*, that whether
   the transactions were of such an unusual character as to oblige
   the plaintiffs to inquire into the agent's authority was, in view
   of the course of dealing, a question for the jury, as was also the
   question whether the defendant had clothed the agent with ap-
   parent authority to make the sales in question.
2. Conversations of plaintiffs with the defendant's agent about the
   very transaction involved in the suit are admissible in evidence.

On appeal from the Supreme Court.

For the appellant, *McDermott, Enright* and *Carpenter.*

For the respondents, *Eugene T. Sharkey.*

The opinion of the court was delivered by

KALISCH, J. This is an appeal from a judgment entered
in the Supreme Court for $670.88, upon the verdict of a jury
in favor of the plaintiffs below and against the defendant
below.

The plaintiffs' complaint contained two counts based on
two separate transactions with the defendant. The first
count alleged that on the 30th day of January, 1922, at the
defendant's store in the city of Elizabeth, through its agent
in charge of the store bought two thousand boxes of candy
at fifteen cents per box upon a verbal agreement with defend-
ant's agent that delivery of the boxes of candy would be made
by defendant at its said store between March 15th, 1922,

and April 15th, 1922, in such quantities as plaintiffs should demand; and that upon the following day, the plaintiffs paid to defendant's agent the sum of $300, the entire purchase price for the candy; that on March 21th, 1922, the plaintiffs received three hundred and fifty boxes of the candy so purchased; that on April 7th, 1922, plaintiffs demanded of defendant delivery to them of the remaining one thousand six hundred and fifty boxes of candy which demand was refused.

The second count was of like import differing only in that the transaction occurred on March 31st, 1922, and the purchase was of two thousand five hundred boxes of candy to be delivered, at defendant's store, in such numbers as the plaintiffs would require from time to time, and that the plaintiffs paid $375, the entire purchase price therefor.

The defendant in its answer admits a demand for the delivery of the candy and the demand was refused and sets up as a separate defence to both counts that the alleged agent was without any authority to bind the defendant, and was acting outside of the scope of his authority which the plaintiffs knew or ought to have known, and that the contracts were null and void under the statute of frauds because they were not in writing.

The defence of the statute of frauds is so devoid of substance as to need no comment. The other defences raised by the pleadings presented factual questions which were for a jury to determine.

The testimony disclosed that the plaintiffs, Doyle and Sarnesky, were employes of the Standard Oil Company, one at Bayonne and the other at Bayway; that they had a candy store in Bayonne; that the defendant had a store in Elizabeth in charge of one Geiser who was the manager thereof. That from time to time both Doyle and Sarnesky on their way from work to their store bought candies in quantities ranging from fifty to five hundred pounds of Geiser at the Elizabeth store; and this appears to have gone on for a considerable time and occurred three or four times a week. Sometimes

the candy purchased was carried away by the plaintiffs per-
sonally; sometimes it was sent by Geiser to their store or
their home by automobile; sometimes delivery was made by
truck of the defendant, &c.

In January, 1922, Doyle was told by Geiser at the Eliza-
beth store that the defendant was offering customers' candy
at a reduced price when purchased in quantities of not less
than two thousand pounds. The result of several more con-
versations between the parties at different times and places
was an order by plaintiffs for two thousand pounds of candy
at fifteen cents per pound, to be paid for at once by the
plaintiffs, and on account of this transaction $300 was paid
and a receipt taken, on account of which only three hundred
and fifty pounds were delivered. A substantially similar
transaction occurred in the early part of March, and for this
purchase of candy at fifteen cents per pound payment was
to be made and was made April 1st, 1922. About six days
later plaintiffs called at the Elizabeth store to get the candy
and were informed that Geiser was not there and also that he
was discharged.

From the testimony offered by the defendant it appeared
that Geiser had authority, as its manager, to sell candy at
any amount in bulk, but only at a price fixed in the main
office. But this limitation of authority, however, was not
advertised or in any way brought to the attention of the pub-
lic. It further appeared that defendant's store managers
were permitted to solicit orders outside of the store when
given permission to do so. There was also testimony to the
effect that the money paid by the plaintiffs to Geiser had
never been turned over to his employer.

There are four grounds presented and argued in appel-
lant's brief for a reversal of the judgment, the first of which
is, that the unusual character of the transactions between
plaintiffs and Geiser were sufficient to put the plaintiffs upon
their guard. But this is an assumption not warranted by the
evidence. Whether or not the plaintiffs should have been on
their guard was a question for the jury to decide.

The second ground relied on is that the court below should have directed a verdict for defendant.

The argument made in support of this contention is that the plaintiffs were conversant with the business usages of the defendant and of the nature of the particular business; that they knew it was a cash store; that it was a chain store; that the defendant had standard prices for its candy, &c.

The testimony does not warrant any such broad assumptions. The case is utterly barren of any testimony from which an only inference could be properly drawn that the plaintiffs had reason or cause to disbelieve the representations made by Geiser, the defendant's manager, that the candy was being sold at a special price, when sold in large quantities. At any rate the matter was for the jury to decide.

We think, furthermore, that the facts required a submission of the case to the jury because they raised the question whether the defendant by its conduct and the situation in which it placed its manager had clothed the latter with apparent authority to make the sales. See *J. Wiss & Sons Co.* v. *H. G. Vogel Co.*, 86 *N. J. L.* 618.

The third ground relied on is that there was no proof that defendant received any of the money for which plaintiffs sue.

This is an obvious fallacy. Payment to the manager was payment to the defendant company. The fact that the money received by the manager was not paid over to the defendant is of no material consequence.

Lastly, it is urged and argued that it was error to admit proof of plaintiff's conversations with Geiser. This contention is manifestly untenable. The conversations with Geiser, and which were objected to, were in relation to negotiations between him and plaintiffs for the sale to them of defendant's candy. The manager having been employed for the very purpose of making sales, what was said by him in the ordinary course of conducting business affairs, as this appears to have been, and within his apparent authority as a manager in full charge, in order to induce the plaintiffs to buy in larger quantities, was binding upon his principal and, therefore, may be properly received in evidence.

For the reasons given the judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, KATZENBACH, WHITE, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 13.

*For reversal*—None.